UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GLENNTORENELL ODOM                                                             PLAINTIFF

v.                                       CIVIL ACTION NO. 3:17CV-P398-CRS

MARK BOLTON *et al.*                                                  DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Plaintiff Glenntorenell Odom, a pretrial detainee at the Louisville Metro Department of Corrections (LMDC), filed the instant *pro se* complaint under 42 U.S.C. § 1983. Plaintiff alleged in the complaint that he reported to LMDC officers that another inmate had been attacked by other inmates. He stated that he was later placed in the same dorm with one of the attackers despite placing conflicts against the attackers to avoid being housed with them. Plaintiff stated that he was assaulted by one of the attackers resulting in injury. He also maintained that he continued to receive threats from other inmates. Upon initial review of the complaint pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's failure-to-protect claims to proceed against Defendants Mark Bolton, Ofc. Pinnick, Ofc. Berry, Ofc. Wiggins, Ofc. Elmore, Ofc. Harmon, Ofc. Troutman, and Steve Flener in their individual capacities. This matter is before the Court on Plaintiff's motion for preliminary injunction and/or temporary restraining order (DN 11).

### I.

In the motion, Plaintiff argues that he is in imminent danger of harm. He states that since filing the complaint, "ofc. Harmon and several other defendants and regular staff are repeatedly coming to plaintiff's cell demanding that the plaintiff 'accept his plea bargain because s**t will only get worse." He asserts that the inmate who attacked him is now back in LMDC. He states, "Said attacker is telling HUNDREDS of inmates that plaintiff is a 'rat' and he 'told' on him and

others [] that beat the victim into a coma and now a wheelchair for the rest of his life." He states that he has been in solitary confinement for 17 months to avoid being placed in the general population "where some of the attackers are, some the attacker's gang members are, and some of the attackers's family members are." He requests to be transferred to a low or medium security dorm or the Community Corrections Center (CCC).

Defendants filed a response (DN 15) to the motion. They deny that Plaintiff is under imminent danger or will suffer irreparable harm. They state the following:

> The Plaintiff had been separated from the general population after his initial altercation with another inmate. He was segregated and then refused to be placed back into the general population. He is not in solitary confinement, but in administrative segregation, which means he is in a single cell. The fact that he does not wish to be placed in the general population complicates the choices for his placement. The Plaintiff has been in administrative segregation since August 24, 2017, but has been in a single cell since his altercation in order to eliminate his fears that he will be attacked if held in the general population.

Defendants also maintain that Plaintiff cannot be transferred to CCC because he has been charged with a crime which does not permit him to be placed there. They further state, "The Defendants are investigating Plaintiff's complaints of being harassed and threatened by other inmates. Until those complaints can be verified, the Plaintiff is being kept safe by being placed in administrative segregation." Defendants also deny that there have been suggestions that Plaintiff accept a plea bargain.

Plaintiff filed a reply (DN 21) to Defendants' response stating that he "constantly receives threats/actions from inmates, Correctional Officers and Defendants. Which, all these incidents have been caught and recorded on camera." He further states as follows:

> Inmates are throwing urine and feces on Plaintiff or, under Plaintiff cell door. Inmates are jamming their single cell door coming out when Plaintiff is out on his one hour recreation time, to do bodily harm to Plaintiff. When Plaintiff is being transfer to and from court, Plaintiff has to be placed into a holding cell with general population inmates. Were, Plaintiff has been gang by his attacker members, on more than one occasion.

Plaintiff argues that Defendants "simply do not care, about Plaintiffs safety." He also states that "Defendants counsel seem to have the facts mixed up about, Plaintiff housing. Plaintiffs been housed in Administrative segregation since late June, 2016." He states that he was attacked by the other inmate in July of 2016 while he was housed in administrative segregation. Plaintiff reports that Defendants tried to transfer him back to general population in July 2017 but that he refused because he believed his safety was at risk. Defendants then issued him a disciplinary report for refusing to follow orders, and Plaintiff was again placed in administrative segregation in August 2017.

Plaintiff states, "Administrative segregation is the same thing as solitary confinement and S.O.R.T. They all get the same privilege and there all on 23 hour lock down with one hour out for recreation." He asserts that "S.O.R.T. inmates are a high risk to security of the jail. S.O.R.T. inmates fight correctional officers and are known to get caught with jail made knives. Defendants house everyone together even Protective Custody inmates." Plaintiff also argues that he could be placed in CCC and identifies two inmates who have the same charges as him who are housed in CCC.

However, because the motion, response, and reply made unsupported allegations, the Court ordered Plaintiff to re-file his motion and reply signed under penalty of perjury and ordered Defendants to file a fully supported response to the motion (DN 22). Both sides complied with the Court's Order. Defendants' response reiterates the same arguments described above, and Defendants attach the affidavit of Martin Baker, the Offender Services Manager for LMDC. The affidavit states as follows:

> I don't believe inmate Odom is in danger of violence directed at him. He is currently housed in Administrative Segregation at his request, with all privileges such as gym, visits and commissary. He states, he will only move to the work aide dorm or CCC. He does not qualify for either. The inmate Odom claims he informed on, is currently in prison, and the inmate who assaulted him [is] no

3

longer in the same jail area as Odom. Both inmates have been gone for several months. I do not know of any communications among inmates who are calling inmate Odom a "snitch or rat." Metro Corrections has not documented any instances of threats made to inmate Odom or violence directed at him since the assault. Inmate Odom is as safe as any other inmate in Metro Corrections.

Plaintiff filed an amended reply "with documentary evidence" signed under penalty of perjury. Plaintiff also reiterates the same arguments made previously and attaches several grievances in which he complains that he did not get his hour out of his cell on certain dates and requests to be moved to CCC. In addition, Plaintiff filed a second motion for preliminary injunction and/or temporary restraining order signed under penalty of perjury. The Court construes the second motion as an amended motion. Therein Plaintiff states that he seeks an order directing "LMDC to move plaintiff to CCC; or a workaide dorm or another County jail."

## II.

To determine whether to grant a temporary restraining order or a preliminary injunction, a district court must consider: (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether its issuance would cause substantial harm to others; and (4) whether the public interest would be served by its issuance. *Summit Cty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004); *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross and Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997). These factors are not "rigid and unbending requirements," as there is no "fixed legal standard" in determining whether to issue an injunction. *In re: Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992). Emergency injunctive relief is an extraordinary remedy "which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Further, "the proof required for

the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

The Court finds that Plaintiff fails to show a likelihood of success on the merits. Plaintiff is not entitled to the relief that he seeks—a transfer. The law is clear that a prisoner has no inherent right under the United States Constitution to be incarcerated in a particular institution or a particular part of an institution. *See Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Meachum v. Fano*, 427 U.S. 215, 223-25 (1976); *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998); *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986). In addition, Plaintiff has failed to demonstrate any state-created liberty interest in being transferred because in Kentucky, the transfer of prisoners is within the discretion of corrections officials. *See* Ky. Rev. Stat. § 197.065. Therefore, the Court finds that Plaintiff has not met his burden in proving a strong likelihood of success on the merits. *See Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) ("[A] finding that there is simply no likelihood of success on the merits is usually fatal."); *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("[W]hile, as a general matter, none of [the] four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.").

In addition, the Court finds that Plaintiff has failed to show that he will suffer irreparable injury without an immediate transfer. As to the irreparable-harm determination, there must be an actual, viable, presently existing threat of serious harm. *Mass. Coal. of Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparedness of the Commonwealth of Mass.*, 649 F.2d 71, 74 (1st Cir. 1981). The plaintiff must show harm that is not remote or speculative, but is actual and imminent. *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). The injury must be of such imminence that there is a clear and immediate need for relief in order to prevent

5

harm. *See Wisconsin Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985).

Plaintiff fails to show that his concerns about his safety are anything more than his own speculation. The grievances attached to his amended reply show that he complained of not receiving his hour out of his cell, complains about his placement in administrative segregation, and asks to be transferred to CCC. In one grievance, Plaintiff states, "Now, you people are trying to put me in harms way." However, none of the grievances reveal that Plaintiff complained of a specific actual or imminent danger to his safety. Further, the evidence and sworn statements by Plaintiff are not sufficient to negate the affidavit of Baker, who avers that Plaintiff is not in imminent danger of harm. Baker states that the specific inmates Plaintiff claims have harmed or threatened him are no longer around him, and Plaintiff fails to identify any other particular threats of harm or identify any other persons who have allegedly threatened him. Once again, the proof necessary to establish entitlement to temporary or preliminary relief "is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d at 739. Plaintiff complains about incidents which occurred in the past and fails to demonstrate any actual, viable, and presently existing threat of serious harm.

The third and fourth elements also weigh against granting preliminary injunctive relief. Taking decisions out of the hands of prison officials under these circumstances could cause substantial harm in disrupting prison administration. Moreover, the Court's intervention in internal prison operations without an urgently compelling and extraordinary reason is viewed as against the public interest. *Lang v. Thompson*, No. 5:10-CV-379, 2010 WL 4962933, at *7 (E.D. Ky. Nov. 30, 2010) ("[J]udicial interference is necessarily disruptive, and absent a sufficient showing of a violation of constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context.").

The Court concludes that the elements for awarding a temporary restraining order or preliminary injunction weigh against granting Plaintiff emergency relief. Accordingly,

**IT IS ORDERED** that Plaintiff's motion and amended motion for a temporary restraining order and/or preliminary injunctive relief (DNs 11 and 25) are **DENIED**.

Date: November 3, 2017

                                                      **Charles R. Simpson III, Senior Judge**
                                                         **United States District Court**

cc: Plaintiff, *pro se*
      Counsel of record
4411.010