UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GLENNTORNELL ODOM                                                                  PLAINTIFF

vs.                                                         CIVIL ACTION NO. 3:17-CV-398-CRS

MARK BOLTON, et al.                                                DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on motion for summary judgment by Defendants. DN 57. Plaintiff filed a response. DN 61. Defendants filed a reply. DN 62. This matter is now ripe for adjudication. For the following reasons, Defendants' motion for summary judgment will be denied.

**I. Legal Standard for Summary Judgment**

Summary judgment is appropriate when the moving party can show "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id*. In undertaking this analysis, the Court must view the evidence in the light most favorable to the non-moving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007).

The party moving for summary judgment bears the burden of proof for establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

They can meet this burden by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the…presence of a genuine dispute." Fed. R. Civ. P. 56(C)(1). This burden can also be met by demonstrating that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party also "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

## II. Factual Background

Plaintiff Glenntorenell Odom, an inmate at the Eastern Kentucky Correctional Center, filed the instant *pro se* complaint under 42 U.S.C. § 1983. Plaintiff bases his claims upon events that took place while he was a pretrial detainee at the Louisville Metro Department of Corrections (LMDC). DN 1 at 5. Plaintiff alleges he reported to LMDC officers that another inmate had been attacked by other inmates in their dorm. *Id*. at 6. Plaintiff states he was later placed in the same area of the facility with one of the attackers despite having placed a "conflict" against him. *Id*. Plaintiff states that he "complained about such and wrote Director Mark Bolton, Steve Flener, and Ofc. Troutman to request that either him or his conflict be moved." *Id*. Plaintiff also alleges Officer Harmon placed Plaintiff into the gym with the attacker, unsupervised, despite Plaintiff's request to be left alone in his cell. *Id*. at 7. Plaintiff states the attacker "sucker-punched" him, knocking him unconscious for nearly fifteen minutes. *Id*. Upon initial review of the complaint pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's Fourteenth Amendment failure-to-protect claim to proceed against the following Defendants in their individual capacities: former LMDC Director Mark Bolton; Officers Pinnick, Berry, Wiggins, Elmore, and Harmon;

Classification Officer Troutman; and Classification Supervisor Flener. This matter is before the Court on Defendants' motion for summary judgment. DN 57.

## III. Discussion

Defendants move this Court for summary judgment on Plaintiff's § 1983 claim, alleging that Odom "failed to properly exhaust all available administrative remedies prior to filing suit as required by 42 U.S.C. § 1997e(a)." DN 57-1 at 1. Defendants also move for summary judgment on Plaintiff's claim against former LMDC Director Mark Bolton because "Bolton is not the individual responsible for supervising inmates in the gym at LMDC" and, therefore, "the Plaintiff has no viable cause of action" against him. DN 57-1 at 5. The court will address both claims.

### A. Exhaustion

#### 1. Legal Standard for Exhaustion

The Prison Litigation Reform Act ("PLRA") states "[n]o action shall be brought with respect to prison conditions under…any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.S. § 1997e. A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks through the state administrative process. *See Porter,* 534 U.S. at 520; *Booth,* 532 U.S. at 741. Prisoner grievance procedures under the PLRA provide prison staff with the opportunity to respond to complaints and create an administrative record for the court if a prisoner files a lawsuit. *Jones v. Bock,* 549 U.S. 199, 204 (2007). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Woodford v. Ngo,* 548 U.S. 81, 90–91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones,* 549 U.S.

3

at 218. Failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of production and persuasion. *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012). "If a genuine issue of material fact exists as to whether a plaintiff has exhausted his or her administrative remedies prior to filing suit, this is a matter of judicial administration that may be decided by the Court." *Lee v. Willey*, 789 F.3d 673, 680 (6th Cir. 2015).

### 2. LMDC's Grievance Process

Defendants state LMDC's grievance process is as follows:

> The inmate must first attempt to resolve his grievance through an informal resolution with the assistance of a staff member. If the inmate is dissatisfied with the proposed resolution at this stage, he may submit a formal grievance to a staff member or forward the grievance to the Shift Commander for review. If the Shift Commander cannot resolve the issue to the inmate's satisfaction, the inmate may file an appeal to the appropriate Divisional Director. If the inmate is not satisfied with the decision by the Divisional Director, he may file an appeal with the LMDC. LMDC may act on the appeal or forward the matter to an investigator for further review. Finally, if the grievance is not resolved at this stage, the inmate may appeal the decision to the Chief/Director of LMDC. Once the inmate has taken the grievance through these channels, he has exhausted his administrative remedies.

DN 57-1 at 4.

Defendants cite Departmental Policy 03-5.02 as the origin of its "multi-step grievance mechanism available to all inmates." DN 57-1 at 4. Upon review, the Court finds that Departmental Policy 03-5.02 varies significantly from the process Defendants insist governs in this case. To exhaust administrative remedies according to Departmental Policy 03-5.02, an inmate must accomplish the following steps: (1) file a one-page written grievance within five working days of the incident; (2) attempt to resolve the problem "through informal resolution means," which "may involve the Grievance Counselor, department head or facility staff;" (3) after receiving a response, decide within five working days whether to appeal to the next level or, if a response is not received within 45 days, proceed to the next level of review; (4) "[i]f the grievant is not satisfied with the outcome of the resolution response, they may appeal in writing to the

4

Director/designee within five…working days after receipt of the resolution response." DN 57-3 at 4–6. In summary, the regulation requires that, prior to filing a lawsuit, a prisoner must file a grievance, attempt to resolve the problem informally with some member of the facility staff, and, if dissatisfied with the resolution (or lack thereof), appeal in writing to the director.[1]

### 3. Steps Allegedly Taken by Defendant

Defendant states that after returning from the hospital, he submitted a grievance to a caseworker. DN 61 at 4-5. Plaintiff provides a copy of a grievance form dated July 8, 2016 that contains the following "Brief Statement of Grievance" (quoted as written):

> Due to lack of security and classification and C/O's not respecting my keep froms I was in the gym and I got attacked by a inmate that I had a keep from on I got sucker punch I also got my face kicked in for 20 minutes I lost my front teeth and my nose is broke I had to go to the hospital none of this would've happen if my keep from was respected all of this happen on camera on July 6, 2016 the c/o's watch me get attacked on camera for 20 min. and never broke it up.

DN 29 at 2. This grievance mirrors the allegations found in Plaintiff's complaint. DN 1.

Plaintiffs contend that Odom never filed a grievance regarding the alleged attack. DN 57-1 at 5. Meka Wingate, LMDC's Grievance Coordinator, affies that "Odom did not file a grievance related to his complaint of being struck by another inmate while in the gym at LMDC." DN 57-5 at 1. Assuming the truth of Defendants' version of events, Plaintiff failed to exhaust his administrative remedies. "At the summary judgment stage, however, we are required to resolve factual disputes in favor of the nonmoving party." *Giannola v. Peppler*, No. 96-2467, 1998 U.S. App. LEXIS 3064, at *10 (6th Cir. Feb. 23, 1998). Accordingly, Odom's sworn statements, as well as the documentary evidence he produced, create a disputed issue of fact as to whether Odom submitted a grievance in accordance with the first step required under Departmental Policy 03-

---

[1] Inmates must also comply with timelines contained within the regulation. As Defendants allege Plaintiff never filed a grievance or appeal at all (not that he simply failed to do so in accordance with the established time limits), the Court will not address the timeliness of Plaintiff's alleged grievances here.

5

5.02. This dispute cannot be resolved on summary judgment.

Defendants argue that even if Plaintiff did file a grievance, he did not exhaust his administrative remedies because "he did not file an appeal of any issue relating to the prison conditions that resulted in the alleged failure to protect." DN 62 at 2–3. Departmental Policy 03-5.02(2)(i) states that an "inmate shall have five (5) working days after receipt of the resolution response to decide whether to appeal to the next level." Plaintiff does not contend that he appealed any "resolution" provided by LMDC personnel. In fact, Plaintiff pleads consistently that LMDC personnel did *not* respond to his grievances. *See*, *e.g. (quoted as written)*, DN 33-1 ("How come none of my grievances are being answered?"); DN 1 at 8 ("Plaintiff filed a grievance and wrote many letters of complaint but the defendants began to cover this incident up and not respond to anything."); DN 26 at 2 ("Plaintiff includes a grievance form copy telling, defendants how plaintiff fears for life. Plaintiffs grievance never gotten a response."); DN 61 at 5 ("I didn't get a response to my first grievance so, I ask the caseworker whats going on with my grievance She said she didn't know. She suggested that I fill out another grievance so I did. Time past and I still didn't get an response to my grievances.").

If prison staff did not respond to Plaintiff's grievances, Plaintiff was still required to continue to the next step of the administrative process. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("an inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations.") (citing *Wright v. Morris,* 111 F.3d 414, 417 n.3 (6th Cir. 1997)). Departmental Policy 03-5.02(2)(j) provides that "[a]n inmate who does not receive a response within forty-five (45) days from the filing of the grievance shall be allowed to pursue his grievance to the next level of review (within five (5) working days)." According to Defendants' motion, the "next level of review" required Odom to "file an appeal to the appropriate Divisional Director."

6

DN 57-1 at 4. However, this requirement is not found anywhere in the regulation provided by Defendants. Instead, Departmental Policy 03-5.02(3)(a) (under the heading "Appeal to the Director/Designee") states "[i]f the grievant is not satisfied with the outcome of the resolution response, they may appeal in writing to the Director/designee within five (5) working days after receipt of the resolution response." Further, Section (3)(g) states "the Director/designee's decision on appeal is final."

In a sworn statement, Plaintiff alleges that he wrote the Director of LMDC about his grievance (quoted as written):

> I filled out another grievance. I turned it in to the caseworker. She told me that there not going to respond to your grievances. The only thing she could suggest me to do is write the Dir. Mark Bolton so, I did and I never got an response. Time past then I wrote another grievance about my grievances never getting a response and I still never got an response for that grievance.

DN 61 at 6. Defendants do not address the validity of Plaintiff's claim that he wrote Director Bolton, nor do they address whether such a writing may constitute an "appeal in writing to the Director/designee" as required by Departmental Policy 03-5.02(3)(a). Instead, Defendants state "Plaintiff never filed an appeal of any of these issues that he claims he did not receive a response." DN 62 at 2. A material issue of fact exists as to whether Odom completed the appeals step required under Departmental Policy 03-5.02. This dispute cannot be resolved on summary judgment.

### B. Claim Against Director Bolton

Defendants move for summary judgment on Plaintiff's claim against Director Mark Bolton. DN 57-1 at 5. Defendants allege Plaintiff "has no viable cause of action against former Director Mark Bolton" because he "is not the individual responsible for supervising inmates in the gym." *Id*.

To succeed on a Fourteenth Amendment failure to protect claim, "a plaintiff must show that (1) 'he is incarcerated under conditions posing a substantial risk of serious harm[,]' and (2) defendant acted with 'deliberate indifference' to that risk." *Jordan v. City of Detroit*, 557 F. App'x 450, 458 (6th Cir. 2014) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). "The doctrine of respondeat superior does not apply in § 1983 actions to impute liability onto supervisors." DN 57-1 at 6. *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 691 (1978). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)(citing *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982).

In the instant case, Plaintiff's claim against Bolton does not rest solely on Bolton's supervisory role as Director of LMDC. Plaintiff alleges, that Bolton was directly involved with the decision to leave Plaintiff in the same housing area as his attacker. Plaintiff states, under penalty of perjury, that he spoke to Bolton and "told him I had a conflict with an inmate in the dorm will you please move me. I told him my safety was at risk." DN 61 at 2. Plaintiff also provides a sworn statement that "Director Mark Bolton told me he would handle it he would move me." DN 61 at 2. In their reply, Defendants do not address whether Odom's alleged conversation with Bolton or his alleged letters to Bolton demonstrate, at a minimum, a knowing acquiescence in the alleged unconstitutional conduct. Viewing the facts in the light most favorable to the non-moving party, issues of material fact exist regarding whether Director Bolton may be held liable for alleged unconstitutional conduct. These issues cannot be resolved on summary judgment.

8

### IV. Conclusion

For the reasons stated herein, a separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

January 24, 2020

**Charles R. Simpson III, Senior Judge
United States District Court**